IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.S.R., a minor,<br>by his mother and next friend,<br>JAQUELINE ROJAS POLANCO<br>2011 Oglethorpe Street, Apt. 102<br>Hyattsville, Maryland 20782<br><br>and<br><br>JAQUELINE ROJAS POLANCO and<br>JORGE SALGUERO, Individually<br>2011 Oglethorpe Street, Apt. 102<br>Hyattsville, Maryland 20782<br><br>      Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br>      Serve: Ronald C. Machen, Jr., Esquire<br>           United States Attorney<br>           555 4th Street, N.W.<br>           Washington, D.C. 20530<br><br>      and<br><br>      The Honorable Eric H. Holder, Jr.<br>      Attorney General of the United<br>      States Department of Justice<br>      Room 4400<br>      950 Pennsylvania Avenue, N.W.<br>      Washington, D.C. 20530-0001<br><br>      and<br><br>      Dept. of Health & Human Services<br>      Office of General Counsel<br>      General Law Division<br>      Claims Branch<br>      330 Independence Avenue, S.W.<br>      Cohen Building, Room 4256<br>      Washington, D.C. 20201<br><br>      Defendant. | **FILED**<br>MAR 2 2 2010<br>Clerk, U.S. District & Bankruptcy<br>Courts for the District of Columbia<br><br>**COMPLAINT**<br><br>Case: 1:10-cv-00467<br>Assigned To : Kessler, Gladys<br>Assign. Date : 3/22/2010<br>Description: PI/Malpractice |

* * * * * * * * * * * *

## COMPLAINT

Plaintiffs, J.S.R., a minor, by his mother and next friend, Jaqueline Rojas Polanco, and Jaqueline Rojas Polanco and Jorge Salguero, Individually, by and through their attorneys, Christian C. Mester, Jean M. Jones, and Goldberg, Finnegan & Mester, LLC, hereby sue Defendant, The United States of America, and in support thereof state as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. § 1346 (b) (1) and § 2671, et. seq.

2. Pursuant to 28 U.S.C. § 2401 (b) and § 2675, and D.C. Law Section 16-2802, et. Seq., notice of the claim in the present action was timely presented and/or served to the appropriate federal agency and to the employees of the federal government. Notices are attached hereto as Exhibit 1. The claim was denied by the Department of Health and Human Services on November 30, 2009. A copy of the letter denying the claim is attached hereto as Exhibit 2. All conditions precedent to filing suit have been satisfied.

3. Venue is appropriate in the District of Columbia pursuant to 28 U.S.C. 1391 (e) (1) and (2).

## THE PARTIES

4. Plaintiff J.S.R. is a minor resident of Maryland who resides with his parents. His birth in the District of Columbia is the event that gave rise to this law suit. He appears in this lawsuit through his mother and next friend, Jaqueline Rojas Polanco.

5. Plaintiffs Jaqueline Rojas Polanco and Jorge Salguero are adult residents of the State of Maryland and are the natural parents of J.S.R., a minor.

6. Defendant The United States of America is the deemed employer of Unity Health Care (hereinafter "Unity") and Victoria Vest, C.N.M. (hereinafter "C.N.M. Vest"), both of whom

rendered the medical care and treatment at issue to Plaintiffs. Unity and C.N.M. Vest have previously been declared deemed employees of the United States based upon Unity's status as a Federally Qualified Health Clinic ("FQHC") and C.N.M. Vest's status as a Unity employee. See Exhibit 3. Therefore, suit against both of them can only be brought pursuant to the Federal Tort Claims Act ("FTCA").

7. At all times relevant, Unity was a FQHC that held itself out as a competent provider of obstetrical, including midwifery, care. At all times relevant, Unity acted as the employee and/or servant of The United States of America and acted within the scope of its agency and/or employment.

8. At all times relevant, C.N.M. Vest was a Certified Nurse Midwife who held herself out as a competent provider of midwifery services. At all times relevant, C.N.M. Vest acted as the employee and/or servant of The United States of America and acted within the scope of her agency and/or employment.

## FACTUAL BACKGROUND

9. On or about February 19, 2007 at approximately 7:49 p.m., Jaqueline Rojas Polanco was admitted to the Washington Hospital Center for induced delivery of her first child. She was 41 weeks plus 3 days gestation.

10. Ms. Rojas Polanco had received her prenatal care at Unity.

11. At the time of her admission, the fetal heart tracing was reactive and generally reassuring, indicating that the fetus was neurologically intact and otherwise healthy.

12. At approximately 9:00 p.m., pitocin, a drug that starts or augments labor, was begun through continuous intravenous infusion. The amount of pitocin was increased periodically in an attempt to produce contractions adequate for delivery of the baby.

13. By 8:20 a.m., on February 20, 2007, it was noted that Ms. Rojas Polanco's contractions were coming too close together (uterine hyperstimulation). Although the fetus was still healthy, this hyperstimulation was an additional stress on him. In addition, the monitoring was being performed by external means, making the fetal heart rate and contraction pattern sometimes very difficult to interpret.

14. At approximately 10:08 a.m., C.N.M. Vest examined Ms. Rojas Polanco and found that she was 9 cm dilated, 100% effaced, and at -2 station. She noticed decreased variability on the fetal monitor, but incorrectly concluded that it was due to medications that the mother had received. At 10:23 a.m., the membranes were artificially ruptured with a return of clear fluid, indicating that the fetus, although stressed, was still healthy.

15. Over the next approximately one hour, variability of the fetal heart rate remained minimal to moderate, with no reactivity.

16. By 11:20 a.m., decelerations (decreases in fetal heart rate) began. Uterine hyperstimulation continued. There was a deceleration into the 90's (normal being 110-160) that lasted for 2 minutes, which is a very worrisome sign. C.N.M. Vest responded to an alarm from the fetal heart monitor. Instead of following the standard of care by discontinuing the pitocin, giving oxygen, changing the maternal position, and giving intravenous fluids (known as intrauterine resuscitative measures), C.N.M. Vest instead performed a vaginal exam and found Ms. Polanco Rojas to be 10 cm dilated, 100% effaced and at 0 station. She instructed Ms. Polanco Rojas to begin pushing, which caused additional stress to the fetus.

17. Predictably, the condition of the fetus deteriorated with the additional stress of pushing. In violation of the standard of care, pitocin administration was continued. At 11:38 a.m., C.N.M. Vest finally ordered that the pitocin be decreased to 14 mu/min, ignoring the

expressed concerns of the nurse that it should be decreased even further. Oxygen was applied, but decelerations in the fetal heart rate continued. Despite these concerning developments, C.N.M. Vest left the room.

18. Thereafter, the fetal well-being continued to deteriorate, with continuing ominous fetal heart rate tracings and uterine hyperstimulation. Despite these findings, C.N.M. Vest did nothing to expedite delivery.

19. Baby J.S.R. was not delivered until approximately 1:08 p.m. on February 20, 2007. He was lifeless, with Apgar scores of 0 at one minute and 1 at five minutes out of a possible score of 10. Within hours, he was transferred to the Neonatal Intensive Care Unit Children's National Medical Center under the head cooling protocol, where he experienced seizures and was diagnosed with hypoxic ischemic encephalopathy ("HIE"), which is brain injury due to lack of oxygen to the brain in the immediate intrapartum period. He was hospitalized at Children's until March 26, 2007, then transferred to the Hospital for Sick Children for long term rehabilitation. He had multiple medical problems, all of which were caused by the severe asphyxia he suffered during his birth.

20. Today, J.S.R. has HIE that manifests itself as spastic quadriplegic cerebral palsy. He has seizures, requires a feeding tube, and has severe physical and cognitive delays. He is cared for at home by his parents, and has extraordinary medical, hospital, rehabilitative, pharmaceutical, nursing, equipment and other needs due to his neurological and other injuries.

21. Had The United States through its deemed employees, Unity and Vest, adhered to the applicable standard of care, the condition of Ms. Rojas Polanco and her unborn baby (J.S.R.) would have been appreciated, appropriate measures would have been taken, the injuries to the Plaintiffs would have been avoided, and Baby J.S.R. would be a normal boy.

## COUNT I—NEGLIGENCE

22. Plaintiff, J.S.R., a minor, by his mother and next friend, Jaqueline Rojas Polanco, hereby incorporates by reference and adopts all of the factual allegations in paragraphs 1-21 as if fully set forth herein.

23. In its care and treatment of Plaintiff J.S.R., a minor, Defendant The United States of America, through its agents and employees, owed J.S.R. the duty to exercise that degree of care and skill that reasonably competent similar health care providers would have exercised in the same or similar circumstances

24. Defendant The United States of America, through its agents and employees, breached that duty, breached the applicable standard of care, and was negligent in the following ways, among others:

    A.    Failing to recognize Ms. Rojas Polanco's condition;

    B.    Failing to recognize her baby's condition;

    C.    Failing to respond appropriately to the mother's condition and the baby's condition on a timely basis;

    D.    Failing to deliver J.S.R., minor, on a timely basis;

    E.    Failing to properly manage and monitor labor and delivery so as to prevent avoidable injury to the mother and baby;

    F.    Failing to recognize and appropriately respond to ominous signs of fetal distress over a prolonged period of time;

    G.    Failing to perform a timely cesarean section;

    H.    Failing to intervene in a timely manner to prevent severe injuries to the baby;

I. Failing to perform appropriate testing to determine the baby's condition and/or failing to appropriately and correctly interpret the tests performed;

J. Failing to give appropriate informed consent;

K. Failing to properly communicate and/or to properly formulate an appropriate treatment plan;

L. Failing to properly and timely resuscitate J.S.R., minor, when he was born;

M. Failing to have properly trained pediatric personnel at the bedside when J.S.R., minor was delivered;

N. Failing to advise and/or communicate with physicians and/or attending physicians of the clinical findings necessary to insure a proper diagnosis and appropriate treatment;

O. Failing to properly communicate and document the pertinent physical findings pertaining to Ms. Rojas Polanco and J.S.R., minor;

P. Failing to ensure Plaintiffs had proper supervisory care;

Q. Failing to go up the chain of command as the condition of the mother and infant continued to deteriorate;

R. Increasing the dosage of Pitocin in the face of uterine hyperstimulation instead of decreasing or discontinuing it;

S. Failing to insert an internal scalp electrode to monitor the status of the fetus and/or intrauterine catheter to monitor Ms. Rojas Polanco's and her fetus' condition; and

T. Performance of other negligent acts and omissions in the care of the mother and the child.

25. In addition, Defendant, The United States of America, through its deemed employee Unity, failed to act as reasonably competent similar health care providers would have acted in the same or similar circumstances, breached its duties under the applicable standards of care and was negligent in the following ways, among others:

A. Failing to adequately train, supervise, and instruct its agents, servants and employees;

B. Failing to establish and/or enforce and/or follow appropriate policies, procedures, and/or protocols;

C. Failing to establish and/or follow and/or enforce appropriate policies, procedures and practices to address properly the needs of patients such as Ms. Rojas Polanco and J.S.R., minor;

D. Failing to adequately credential, train, supervise, and instruct their agents, servants and employees;

E. Failing to advise physicians and/or attending physicians of the clinical findings necessary to insure a proper diagnosis and appropriate treatment;

F. Failing to properly communicate and document the pertinent physical findings pertaining to Ms. Polanco Rojas and Baby J.S.R.;

G. Failing to go up the chain of command as the condition of the mother and infant continued to deteriorate; and

H. Performance of other negligent acts and omissions in the care of the mother and child.

26. As a direct and proximate result of the aforegoing negligence on the part of Defendant The United States of America, through its agents and employees, Baby J.S.R., a

minor, sustained severe, painful, permanent and disabling injuries and has suffered and will continue to suffer injuries including, but not limited to:

    A.    Neurological impairment, cerebral palsy, brain damage, and hypoxic ischemic encephalopathy, in addition to other severe, permanent, and disabling medical conditions;

    B.    Severe and permanent impairment of his cognitive and speech and language skills and developmental delay, including mental retardation as well as impairment of social, fine and gross motor skills;

    C.    Physical disfigurement;

    D.    Past, present and future physical pain, mental anguish and emotional suffering;

    E.    Inconvenience and discomfort;

    F.    Embarrassment and humiliation;

    G.    Diminished enjoyment and quality of life; and

    H.    Loss of earnings and diminished earning capacity.

27.    As a further direct and proximate result of the aforesaid negligence of Defendant, The United States of America, through its agents and employees, Baby J.S.R., a minor, has required prolonged hospitalization and the need for ongoing medical, nursing, hospital, pharmaceutical, rehabilitative, and custodial care, and has required and will continue to require substantial medical, custodial, nursing and related care, various types of therapies such as physical, occupational and rehabilitative, pharmaceutical and other care including specialized devices and equipment for which significant sums of money have been and will continue to be expended in the past, present and future.

WHEREFORE, Plaintiff, J.S.R., minor, by his mother and next friend, Jaqueline Rojas Polanco, requests that judgment be entered against the Defendants and that he be compensated for damages in the amount of Sixty-Five Million Dollars ($65,000,000.00) plus costs and such other and further relief as may be necessary and proper.

## COUNT II - NEGLIGENCE

28. Plaintiffs, Jaqueline Rojas Polanco and Jorge Salguero, individually, incorporate by reference herein all the facts and allegations contained in paragraphs 1 through 27 of the Complaint as if fully set forth herein.

29. As a direct and proximate result of the aforesaid negligence on the part of the Defendant The United States of America, through its agents and employees, Jaqueline Rojas Polanco and Jorge Salguero have expended and will continue to expend large sums of money for medical and hospital care, nursing services, therapy, rehabilitative care, custodial and other care, and related services for their son, Baby J.S.R.

WHEREFORE, Plaintiffs, Jaqueline Rojas Polanco and Jorge Salguero, individually, request that judgment be entered against the Defendants and request that they be compensated damages in the amount of Ten Million Dollars ($10,000,000.00) plus costs and such other and further relief as may be necessary and proper.

## COUNT III - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

30. Plaintiffs, Jaqueline Rojas Polanco and Jorge Salguero, individually, incorporate by reference herein all the facts and allegations contained in paragraphs 1 through 29 of the Complaint as if fully set forth herein.

31. As a direct and proximate result of the aforesaid negligence on the part of the Defendant, The United States of America, through its agents and employees, Jaqueline Rojas

Polanco and Jorge Salguero were in the zone of danger and witnessed the negligence of Defendant and the pain and suffering of their child, Baby J.S.R., causing them pain, suffering, mental anguish, and other severe and permanent injuries.

WHEREFORE, Plaintiffs, Jaqueline Rojas Polanco and Jorge Salguero, individually, request that judgment be entered against the Defendants, jointly and severally, and request that they be compensated damages in the amount of Ten Million Dollars ($10,000,000.00) plus costs and such other and further relief as may be necessary and proper.

Respectfully Submitted,

**GOLDBERG, FINNEGAN & MESTER, LLC**

Christian C. Mester, Bar No. 470209
Jean M. Jones, R.N., J.D., Bar No. 431866
1010 Wayne Avenue
Suite 950
Silver Spring, Maryland 20910
(301) 589-2999
(facsimile)(301) 589-2644
cmester@gfmlawllc.com
jjones@gfmlawllc.com

Attorneys for Plaintiffs